**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CRIMINAL ACTION NO. 19-77-DLB-CJS**

**UNITED STATES OF AMERICA**                                                      **PLAINTIFF**


**v.**                                        **MEMORANDUM OPINION AND ORDER**


**DONTEZ JUSTICE**                                                               **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court upon Magistrate Judge Candace J. Smith's Corrected Report and Recommendation ("R&R") (Doc. # 51),[1] wherein she recommends that Defendant Dontez Justice's Motion to Suppress (Doc. # 19) be denied as moot and his Amended Motion to Suppress (Doc. # 39) be denied.  Defendant having filed Objections to the R&R, (Doc. # 52), the R&R is now ripe for the Court's review.  For the reasons set forth herein, Defendant's Objections are **overruled**, the R&R is **adopted in full**, and the Motions to Suppress are **denied**.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

On October 17, 2019, Boone County Sheriff's Deputy Melton conducted a traffic stop and arrested a passenger in the vehicle for trafficking in methamphetamine.  (Doc. # 51 at 2).  The passenger agreed to serve as a confidential informant ("CI") and "discuss what she knew about illegal drug activity in the area" in exchange for leniency when it came to her own potential criminal charges.  *Id.* at 2–3.  Specifically, she agreed to assist

---

[1]      The Corrected Report and Recommendation fixed a grammatical error that was in the original Report and Recommendation (Doc. # 50).

law enforcement officers with arranging a controlled buy of methamphetamine from "Monnie," an individual she described as "a black man with long dreads [who] drove an aqua teal car." *Id.* She stated that she had purchased methamphetamine from Monnie the day before and permitted officers to look at her cellphone, "which corroborated a drug transaction . . . with Monnie on October 16, 2019." *Id.* at 2. "Monnie" was Defendant Dontez Justice. *Id.* at 5–6.

The CI called Monnie and asked if he would sell her "two," meaning two ounces of methamphetamine; Monnie agreed and arranged to meet the CI at a McDonald's in Crescent Springs, Kentucky. *Id.* at 3. The CI and DEA agent Matt Day went to the McDonald's to wait for Monnie. *Id.* Officer Day told the CI that once she saw Monnie at the McDonald's she was to "contact Monnie to change the meeting location, at which point local law enforcement would conduct a traffic stop of Monnie's vehicle." *Id.* After some time, the CI saw a person driving a teal Chevy Impala in the McDonald's parking lot and identified the driver as Monnie; the CI stated that "she was absolutely certain that it was him." *Id.* As planned, the CI then called Monnie and asked to change the meeting location to the nearby the Kremer's Market instead of the McDonald's. *Id.* at 4. The person who the CI had identified as Monnie pulled out of the McDonald's parking lot and started driving toward the Kremer's Market. *Id.*

At this time, Villa Hills Police Officer Tyler Brockman began following Monnie, the Defendant. *Id.* at 4–5. Officer Brockman had been communicating with other law enforcement officers about the controlled buy between the CI and Defendant; at the evidentiary hearing before Judge Smith, he testified that he heard someone he believed to be a DEA agent say over the radio that Defendant had left the McDonald's and was

2

turning westbound on Buttermilk Pike.  *Id.* at 5.  In light of this, Officer Brockman began following Defendant on Buttermilk Pike and initiated a traffic stop when Defendant failed to use a turn signal before changing lanes.  *Id.*

Officer Brockman exited his vehicle and approached Defendant's vehicle; he testified that he "smelled a strong odor of marijuana."  *Id.*  Officer Brockman asked Defendant to exit his vehicle and conducted a "pat-down."  *Id.* at 6.  He found what he believed to be a package of marijuana in Defendant's pocket.  *Id.*  Officer Brockman placed Defendant in handcuffs and ordered him to sit nearby as he continued searching Defendant's vehicle; he found nothing in the car.  *Id.* at 6.  At this point, other officers had arrived at the scene, including Officer Kyle Warner of the Covington Police Department.  *Id.*  Officer Brockman and Officer Warner then proceeded to search Defendant's person; they found two bags of what they believed to be methamphetamine in Defendant's groin area.  *Id.*  Officer Warner's canine partner Holly also alerted "to the smell of drugs coming from [Defendant's] vehicle."  *Id.*

On December 12, 2019, Defendant was indicted for possession with intent to distribute 5 grams or more of methamphetamine on or about October 17, 2019.  (Doc. # 1).  On February 13, 2020, Defendant filed a Motion to Suppress, arguing that the evidence discovered during the traffic stop should be suppressed because it was the result of an illegal search and seizure.  (Doc. # 19).  That same day, Defendant was indicted on a Superseding Indictment.  (Doc. # 16).  Defendant then filed an Amended Motion to Suppress on April 24, 2020.  (Doc. # 39).  Judge Smith held an evidentiary hearing on June 12, 2020, (Doc. # 48), and on July 16, 2020 she filed an R&R recommending that Defendant's Motion to Suppress be denied as moot and Defendant's

Amended Motion to Suppress be denied, (Doc. # 51).  Defendant having timely filed

Objections to the R&R, (Doc. # 52), the Motions to Suppress and the R&R are ripe for

review.

## II.     ANALYSIS

### A.     Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59,

a district court may refer a motion to suppress to a magistrate judge for the preparation

of a report and recommendation.  "The magistrate judge must promptly conduct the

required proceedings and enter on the record a recommendation for disposing of the

matter, including any proposed findings of fact."  FED. R. CRIM. P. 59(b)(1).  If a party files

timely objections to the recommendation, the district court must consider those objections

de novo and "accept, reject, or modify the recommendation."  FED. R. CRIM. P. 59(b)(3).

Failure to object to a magistrate judge's findings or conclusions results in waiver of those

objections.  FED. R. CRIM. P. 59(b)(2).

"The filing of objections to a magistrate's report enables the district judge to focus

attention on those issues—factual and legal—that are at the heart of the parties' dispute."

*Thomas v. Arn*, 474 U.S. 140, 147 (1985).  Therefore, objections to a magistrate judge's

R&R must be "specific."  FED. R. CRIM. P. 59(b)(2).  Vague, general, or conclusory

objections are improper, will not be considered by the reviewing court, and are

"tantamount to a complete failure to object."  *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir.

2001); *see also Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("[A] general objection

to a magistrate's report, which fails to specify the issues of contention, does not satisfy

the requirement that an objection be filed.  The objections must be clear enough to enable

4

the district court to discern those issues that are dispositive and contentious.").

Objections that merely state disagreements with the magistrate judge's conclusion or

restate arguments previously presented to the magistrate judge are similarly improper.

*United States v. Bowers*, No. 0:06-cv-7-DLB-REW, 2017 WL 6606860, at *1 (E.D. Ky.

Dec. 26, 2017); *United States v. Vanover*, No. 2:10-cr-14-DLB-REW, 2017 WL 1356328,

at *1 (E.D. Ky. Apr. 11, 2017).

### B.      Objections

Here, Defendant raises two main objections to the R&R.   (Doc. # 52).   First,

Defendant objects to Judge Smith's finding that his arrest was supported by probable

cause.  *Id.* at 2–3.   Second, Defendant objects to Judge Smith's adherence to *United*

*States v. Montgomery*, 377 F.3d 582 (6th Cir. 2004).  *Id.* at 3–4.   The Court will address

each of Defendant's objections in turn.

### 1.      *There was probable cause to arrest Defendant.*

"The Fourth Amendment, which applies to the states through incorporation by the

Fourteenth Amendment, protects the right of the people to be secure in their persons,

houses, papers, and effects, against unreasonable searches and seizures."  *Stricker v.*

*Twp. of Cambridge*, 710 F.3d 350, 358 (6th Cir. 2013) (citing U.S. CONST. amend. IV).  A

"warrantless arrest" is "reasonable under the Fourth Amendment where there is probable

cause to believe that a criminal offense has been or is being committed."  *Devenpeck v.*

*Alford*, 543 U.S. 146, 152 (2004).   Thus, whether an arrest is "constitutionally valid

depends in turn upon whether, at the moment the arrest was made, the officers had

probable cause to make it—whether at that moment the facts and circumstances within

their knowledge and of which they had reasonably trustworthy information were sufficient

to warrant a prudent man in believing that the [defendant] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964).  The arresting officer may rely on information obtained from other officers involved in the investigation to establish probable cause to conduct an arrest.  *United States v. Duval*, 742 F.3d 246, 253 (6th Cir. 2014); *cf. United States v. Lyons*, 687 F.3d 754, 766 (6th Cir. 2012) (finding that courts may "impute collective knowledge among multiple law enforcement agencies, even when the evidence demonstrates that the responding officer was wholly unaware of the specific facts that established reasonable suspicion for the stop").

The "probable-cause standard is a 'practical, nontechnical conception' that deals with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'"  *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (quoting *Illinois v. Gates*, 426 U.S. 213, 231 (1983)).  When determining probable cause, courts consider the events leading up to the arrest "from the standpoint of an objectively reasonable police officer."  *Id.* at 371 (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)).  "While probable cause means that 'officers must show more than mere suspicion, the probable cause requirement does not require that they possess evidence sufficient to establish a prima facie case at trial, much less evidence sufficient to establish guilt beyond a reasonable doubt.'"  *United States v. Romero*, 452 F.3d 610, 616 (6th Cir. 2006) (quoting *United States v. Strickland*, 144 F.3d 412, 416 (6th Cir. 1998)).

Here, the officers had probable cause to arrest Defendant.  As Judge Smith carefully explained in her R&R, a prudent person in the officer's position at the time of the traffic stop would believe that Defendant had committed or was committing a crime.  (Doc. # 51 at 12).  When he ultimately made the arrest, Officer Brockman was aware of the

6

following: (1) that the CI had positively identified Defendant, (2) that Defendant had arrived at the McDonald's where the controlled buy with the CI was set to occur, and (3) and then promptly left the McDonald's "after being contacted by the CI to head to a secondary meet location." *Id.* at 9. These facts are sufficient to establish probable cause to arrest the Defendant for a drug offense. *See United States v. Arnold*, 442 F. App'x 207, 210–11 (6th Cir. 2011) (finding probable cause based on "confidential informant's tips and corroboration thereof, the observation of people surrounding [defendant's] open trunk, the informant's arrangement of a controlled buy over the phone, and [defendant's] drive to the proposed drug deal location").

In his Objections, Defendant highlights three facts which he argues prove that the officers did not "have reasonably trustworthy knowledge" to establish probable cause: (1) "[t]he CI did not know the identity of Monnie," (2) "law enforcement did not know [Defendant's] criminal record or history," and (3) "the CI was arrested with far more methamphetamine than she claimed to have purchased from Monnie the day before her arrest," which "cast doubt on her claims about Monnie." (Doc. # 52 at 3). None of these three arguments amount to a proper objection. First, Defendant's claim that the CI did not know the identity of Monnie contradicts not only Judge Smith's factual findings, *see* (Doc. # 51 at 3), but also Defendant's own past admissions, (Doc. # 39 at 13) (Amended Motion to Suppress) ("The [CI] positively identified [Defendant] at the McDonald's for the agents."). At best, it appears that Defendant's first objection is stating a disagreement with Judge Smith's conclusion that the CI identified Defendant. However, an objection that simply voices a disagreement with the R&R is improper. *Bowers*, 2017 WL 6606860, at *1. Defendant other two arguments simply restate arguments that were previously

before Judge Smith.  *Compare* (Doc. # 52 at 3) (objecting that officers' lack of knowledge

of Defendant's criminal history), *with* (Doc. # 39 at 9) (Officer Brockman "did not have any

criminal history record of [Defendant] at the time of the frisk and search"); *compare* (Doc.

# 52 at 3) (calling into question the CI's credibility), *with* (Doc. # 39 at 12) ("The credibility

of the [CI] was unknown.").[2]   Objections that merely restate arguments already

considered by the magistrate judge are improper.  *Bowers*, 2017 WL 6606860, at *1.

Accordingly, because the Defendants objections are improper and because the Court

finds that there was probable cause to arrest Defendant, Defendant's first objection is

**overruled**.

### 2.	Judge Smith properly applied Sixth Circuit precedent.

Second, Defendant objects to Judge Smith's reliance on *United States v.*

*Montgomery*.  (Doc. # 52 at 3–4).  Under *Montgomery*, a law enforcement officer may

"conduct a full search of an arrestee's person *before* he is placed under lawful custodial

arrest as long as 'the formal arrest follow[s] quickly on the heels of the challenged

search' . . . and the fruits of that search are not necessary to sustain probable cause to

arrest him."  *Montgomery*, 377 F.3d at 586 (alteration in original) (quoting *Rawlings v.*

---

[2]	While Defendant has not previously brought up the specific fact that the CI was arrested with more methamphetamine than she claimed to have purchased from Defendant as a basis for questioning the CI's credibility, *see* (Doc. # 39), he previously argued that the CI was not credible in general terms, *see id.*  Furthermore, even if the CI was arrested with more methamphetamine than what she allegedly bought from Defendant, it unclear how that fact calls into question the CI's credibility given that law enforcement officers corroborated the drug transaction between the CI and Defendant by looking at the CI's cellphone.  (Doc. # 51 at 2).  Accordingly, the Court finds no reason to question Judge Smith's determination that the CI was credible.  *See Peveler v. United States*, 269 F.3d 693, 702 (6th Cir. 2001) (giving deference to the magistrate judge's credibility determination); *United States v. Johnson*, No. 10-cr-20176, 2011 WL 3844194, at *2 (W.D. Tenn. Aug. 30, 2011) (quoting *United States v. Robinson*, No. 1:07-cr-1, 2007 WL 2138635, at *1 (E.D. Tenn. July 23, 2007)) ("Credibility determinations of the magistrate judge who personally listened to the testimony of a witness should be accepted by a district judge unless in his de novo review of the record [the district court] finds a reason to question the magistrate judge's assessment.").

*Kentucky*, 448 U.S. 98, 111 (1980)).   Defendant does not argue that Judge Smith misapplied the law from *Montgomery*.  (Doc. # 52 at 3–4).  Instead, Defendant claims that *Montgomery* allows officers to go on a "'fishing expedition' in which a [suspect's] Constitutional rights are ignored" and therefore, presumably, should be overturned.  *Id.*

This Court cannot ignore binding precedent.  "Absent a clear directive from the Supreme Court or a decision of the Court of Appeals sitting en banc, . . . a district court, is not at liberty to reverse the circuit's precedent."  *Willoughby v. Simpson*, 5:08-cv-179-DLB, 2014 WL 4269115, at \*32 (E.D. Ky. Aug. 29 2014) (quoting *Hall v. Eichenlaub*, 559 F.Supp.2d 777, 781–82 (E.D. Mich. 2008)).  Unless *Montgomery* is reversed, this Court is bound by the decision of the Sixth Circuit Court of Appeals.  *Id.*  Even if the Court agreed with Defendant, the Court would still have no authority to go against the binding precedent of this Circuit.  *Id.*  Accordingly, Defendant's second objection is **overruled**.

## III.   CONCLUSION

In sum, Defendant Justice fails to raise any non-repetitive, meritorious legal objections to Judge Smith's conclusions.  Additionally, the Court has reviewed Judge Smith's R&R and finds that it is sound in its analysis and conclusions.  Having found no meritorious objections, and for the reasons stated herein,

**IT IS ORDERED** that:

(1)    The Magistrate Judge's Report and Recommendation (Doc. # 51) is hereby **adopted in full**;

(2)    Defendant Justice's Objections (Doc. # 52) to the R&R are **overruled**;

(3)    Defendant Justice's Motion to Suppress (Doc. # 19) is **denied as moot**;

(4)    Defendant Justice's Motion to Suppress (Doc. # 39) is **denied**;

(5)     The time period from February 13, 2020 through today's date, totaling 175 days, is **excluded** from the provisions of the Speedy Trial Act, pursuant to 18 U.S.C. §§ 3161(h)(1)(D)&(H); and

(6)     This matter is scheduled for a **Status Conference** on **Friday, August 14, 2020 at 9:00 a.m. in Covington**.  The parties shall be prepared to set this matter for trial at that time.

This 6th day of August, 2020.

Signed By:

_David L. Bunning_   DB

United States District Judge

J:\DATA\ORDERS\Covington Criminal\2019\19-77 Order adopting R&R re MTS.docx